IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELISSA AGLIRA<br>3357 Fairdale Road<br>Philadelphia, PA 19154 | : | Civil Action |
| Plaintiff, | : | No. _____ |
| v. | : | |
| WIRELESS XCESSORIES GROUP, INC.<br>1840 County Line Road, Suite 301<br>Huntington Valley, PA 19006 | : | Jury Trial Demanded |
| Defendant. | : | |

## CIVIL ACTION COMPLAINT

AND NOW comes Plaintiff, Melissa Aglira, by and through her undersigned counsel, and files this Civil Action Complaint, averring as follows:

### I.      Introduction

1.      Plaintiff, Melissa Aglira (hereinafter "Plaintiff"), initiates this action to seek redress against Defendant, Wireless Xcessories Group, Inc. (hereinafter "Defendant"), her former employer, for unlawful sexual and gender harassment, gender discrimination, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, the Pennsylvania Human Relations Act, and other applicable federal and state law.

### II.      The Parties

2.      Plaintiff is an adult female, currently residing at the above address.

3. Defendant is a corporation, created and existing pursuant to the laws of the State of Delaware and registered to conduct business in the Commonwealth of Pennsylvania, with a principal place of business at the above address.

4. At all times relevant, Defendant acted by and through its agents, servants, and employees, each of whom, at all times relevant, acted within the scope of his or her job duties.

5. Defendant is an "employer" within the meaning of Title VII of the Civil Rights Act because it is engaged in an industry affecting interstate commerce and because it maintained or maintains fifteen (15) or more employees for each working day in each of twenty (20) or more weeks in the current or preceding calendar year.

6. Defendant also maintains a sufficient number of employees to satisfy the jurisdictional prerequisites of the Pennsylvania Human Relations Act (requiring four or more employees).

### III.   Jurisdiction and Venue

7. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

8. The Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

9. The United States District Court for the Eastern District of Pennsylvania may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and

1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Defendant is located in and conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district (Plaintiff was employed in the Eastern District of Pennsylvania at the time of the unlawful actions set forth herein).

### IV. Procedural and Administrative Remedies

11. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

12. Plaintiff has satisfied the procedural and administrative requirements for proceeding under Title VII of the Civil Rights Act as follows:

   a. On or about January 29, 2006, Plaintiff filed a timely written charge of discrimination (PHRC No. 2005-01501) against Defendant with the Pennsylvania Human Relations Commission, which charge was cross-filed with the Philadelphia office of the Equal Employment Opportunity Commission (EEOC No. 17F-2006-61271), alleging sexual and gender harassment, gender discrimination, and retaliation;

   b. The Equal Employment Opportunity Commission issued a Notice of Right to Sue on the foregoing charge on or about August 5, 2009;

   c. The instant action is timely because it is initiated within ninety (90) days of the receipt of the aforementioned Notice.

13. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

### V. Factual Background

14. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

15. Plaintiff was employed by Defendant from September 29, 2003 until August 22, 2005 as a Customer Service Representative.

16. During the course of her employment, Plaintiff was subjected to a pattern of sexual and gender harassment and gender discrimination by David Fisher, Senior Salesman, including but not limited to:

   a. Mr. Fisher asked Plaintiff to give him a "blow job";

   b. Mr. Fisher told male employees, "There's a party in Melissa's mouth and everybody is coming";

   c. On January 12, 2005, Mr. Fisher sent Plaintiff an email asking, "How about a BJ?";

   d. Mr. Fisher asked Plaintiff to let him watch her lick a lollipop;

   e. Mr. Fisher brushed up against Plaintiff to feel her breasts;

   f. Mr. Fisher threw a stapler at Plaintiff;

   g. Mr. Fisher threw Plaintiff's work in the waste bin and tossed coffee on top of it;

   h. Mr. Fisher falsely told the Customer Service Manager, Sue Hirshock, that Plaintiff was neglecting her sales duties;

   i. Mr. Fisher called female employees "stupid cunt fuckers";

   j. Mr. Fisher referred to female employees as "bitches";

      k.  Mr. Fisher never treated male employees in the above manner.

17.    Throughout 2005, Plaintiff made complaints of Mr. Fisher's behavior to Ronald Badke (CFO), Ms. Hirshock, and Jerry Caiazzo (Sales Representative).

18.    On August 22, 2005, Plaintiff was terminated by Defendant allegedly because Defendant had no positions that would meet Plaintiff's skills.

19.    Following Plaintiff's termination, Defendant employed Melissa Donohue, Amy Markl, Carrie Lawson, and Kandise Noble as Customer Service Representatives.

20.    No disciplinary action was ever taken against Mr. Fisher regarding Plaintiff's complaints.

21.    The Pennsylvania Human Relations Commission issued a Finding of Probable Cause that:

> [P]robable cause exists to credit [Plaintiff's] allegation that [Defendant] unlawfully discriminated against her because of her sex, female, with respect to the terms, conditions and privileges of her employment and for discharging her for opposing an act made unlawful by the PHRA in violation of Section 5 of the Pennsylvania Human Relations Act.

PHRA Findings of Fact, attached hereto as Exhibit "A").

### Count I
### Title VII – Sexual and Gender Harassment

22.    All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

23.    The foregoing conduct by Defendant constitutes unlawful harassment against Plaintiff on the basis of her gender.

24.    As a result of Defendant's unlawful harassment, Plaintiff has suffered damages as set forth herein.

*WHEREFORE*, Plaintiff seeks the damages set forth in the *Ad Damnum* Clause of this Complaint, *infra*.

## Count II
### Title VII – Gender Discrimination

25.   All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

26.   The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her gender.

27.   As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

*WHEREFORE*, Plaintiff seeks the damages set forth in the *Ad Damnum* Clause of this Complaint, *infra*.

## Count III
### Title VII - Retaliation

28.   All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

29.   In complaining about gender discrimination and sexual harassment, Plaintiff engaged in conduct that is protected under Title VII of the Civil Rights Act.

30.   Defendant's conduct, in terminating Plaintiff's employment as a result of her complaints of gender discrimination and sexual harassment, constitutes unlawful retaliation.

31.   As a result of Defendant's unlawful retaliation, Plaintiff has suffered damages as set forth herein.

*WHEREFORE*, Plaintiff seeks the damages set forth in the *Ad Damnum* Clause of this Complaint, *infra*.

## Count IV
### Pennsylvania Human Relations Act

32. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

33. The foregoing conduct by Defendant constitutes violations of the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*

34. As a result of Defendant's unlawful conduct, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the *Ad Damnum* Clause of this Complaint, *infra.*

### *Ad Damnum Clause/Prayer for Relief*

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendant and that it enter an Order as follows:

a. Defendant is to be permanently enjoined from permitting sexual or gender harassment against Plaintiff;

b. Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom of permitting sexual or gender harassment in the workplace, and is to be ordered to promulgate an effective policy against such harassment and to adhere thereto;

c. Defendant is to be permanently enjoined from discriminating against Plaintiff on the basis of her gender;

d. Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom of permitting gender discrimination in the workplace, and is to be ordered to promulgate an effective policy against such discrimination and to adhere thereto;

e. Defendant is to be permanently enjoined from retaliating against Plaintiff for exercising her right under federal and/or state law;

f. Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom of retaliating against employees for engaging in protected activity under federal and/.or state law, and is to be ordered to promulgate an effective policy against such retaliation and to adhere thereto;

g. Defendant is to compensate Plaintiff, reimburse Plaintiff, and to make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered discrimination and retaliation at the hands of Defendant until the date of verdict;

h. Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused to her by Defendant's actions;

i. Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious, and outrageous conduct, and to deter Defendant or any other employees from engaging in such misconduct in the future;

j. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

k. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

l.  Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law;

m.  Plaintiff is to be granted such additional injunctive or other relief as she may request during the pendency of this action in an effort to ensure Defendant does not engage – or ceases engaging - in illegal retaliation against Plaintiff or other witnesses to this action;

n.  The Court is to maintain jurisdiction of this action after verdict to ensure compliance with its Orders therein;

o.  Plaintiff's claims against Defendant are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

         Respectfully submitted,

         TIMOTHY M. KOLMAN AND ASSOCIATES

By: /s/ Rufus A. Jennings, Esquire
     Wayne A. Ely, Esquire
     Rufus A. Jennings, Esquire
     Attorneys for Plaintiff
     414 Hulmeville Avenue
     Penndel, PA 19047
     Phone: (215) 750-3134
     Fax:   (215) 750-3138
     Email: rjennings@kolmanlaw.net

August 17, 2009

# EXHIBIT "A"

COMMONWEALTH OF PENNSYLVANIA
PENNSYLVANIA HUMAN RELATIONS COMMISSION

MELISSA AGLIRA,          :
                         :
    Complainant          :
                         :
    v.                   :   Docket No. 200501501
                         :
WIRELESS XCESSORIES      :
GROUP,                   :
                         :
    Respondent           :

## FINDING OF PROBABLE CAUSE

### SUMMARY OF COMPLAINT:

The Complainant alleges that the Respondent discriminated against her because of her sex, female, with respect to the terms, conditions, and privileges of her employment by subjecting her to incidents of sexual harassment by her supervisor and for discharging her for opposing such discrimination, in violation of Section 5(d) of the Pennsylvania Human Relations Act, 43 P.S. 951-963.

### SUMMARY OF RESPONSE:

The Respondent denies that there has been a violation of the Pennsylvania Human Relations Act and denies that Melissa Aglira was discriminated against or discharged in retaliation for reporting discrimination. The Respondent alleges that the Complainant was terminated for low quality of work. In addition, "lack of work was the basis for the layoff."

## FINDINGS OF FACT IN SUPPORT OF PROBABLE CAUSE

Whereas the facts of the investigation have disclosed the following:

1.  Melissa Aglira (hereinafter "The Complainant") is an adult female.

2.  Wireless Xcessories Group (hereinafter, "The Respondent"), at all times relevant to the case at hand, employed four or more persons within the Commonwealth.

3.  The Respondent maintains offices at 1840 County Line Road, Huntingdon Valley, PA 19006.

4.  In 2004, the Complainant was employed by the Respondent as a customer service representative.

5.  At all times relevant to this complaint and during the course of her employment, the Complainant was supervised by senior salesman David Fisher.

6.  Beginning in 2004, Fisher subjected the Complainant to verbal abuse and unwelcome sexual advances, including but not limited to:

    a.  Fisher asked the Complainant to give him a "BJ" while simulating the act with his hands and mouth.

    b.  Fisher asked the Complainant to allow him to watch her lick a lollipop.

    c.  Fisher told the Complainant that there was a party in her mouth to which the male staff was invited.

    d.  Fisher emailed the Complainant while working and asked, "How about a BJ."

    e.  Fisher brushed up against the Complainant to feel her breasts.

    f.  Fisher threw staplers, a telephone receiver, pens, and papers at the Complainant.

g. Fisher took the Complainant's work, threw it in a wastebasket, and poured coffee on it so she would be unable to complete it.

h. Fisher often shouted expletives at the Complainant, including yelling "What is your fucking problem?"

i. Fisher emailed the Complainant at work with a picture of an unusual looking fictional character. The subject line of the email read "A picture of Your new csr at home."

j. Fisher emailed the Complainant at work to tell her that he "will tone down the language but...will still get pissed off when you go off on me."

7. At all times relevant to this complaint, the Complainant rejected Fisher's unwelcome sexual advances and unwelcome verbal and physical harassment.

8. During the investigation multiple witnesses stated that they witnessed Fisher making unwelcome sexual advances and engaging in other unwelcome verbal and physical conduct toward female employees, without reprimand from the Respondent.

9. Catherine Driban, a former Respondent employee (hereinafter "Driban") stated that she witnessed Fisher act in an antagonistic, crude, and chauvinistic manner toward female employees, including but not limited to:

a. Fisher commented on a fellow employee's "huge breasts."

b. Fisher commented about his penis and his need to have a blowjob.

c. Fisher commented to her that if Fisher were given the chance to have sex with her, she would never again desire sex with another Jewish man.

d. Fisher compelled most female employees to avoid contact with him.

e. Fisher often sent sexually offensive emails to female employees, including a picture of females participating in a wet t-shirt contest.

    f. Fisher threw documents at the Complainant in an intimidating manner.

    g. Fisher rarely, if ever, yelled at male employees.

    h. Fisher was a favorite of the Respondent's owner and could do whatever he wanted without reprimand.

10.    Helen Meyer, who formerly worked with Fisher, stated that she witnessed Fisher's disrespectful conduct toward women and became "fed up" with how female employees were treated, including but not limited to:

    a. Fisher yelled at and belittled female employees in front of others.

    b. Fisher called female employees "stupid cunt fuckers," and used the term "bitch" several times.

    c. Fisher often made his female assistants cry about being humiliated for no reason at all.

    d. Fisher went through at least four female assistants while Meyer retained the same assistant for nine years. Fisher often made them work an unusually high number of hours.

    e. Fisher was never disrespectful to male employees.

11.    Throughout 2005, the Complainant repeatedly made verbal complaints to the Respondent's CFO, Ronald Badke, Customer Service Manager, Susan Hirshock, and Sales Representative, Jerry Caiazzo, that Fisher was subjecting her to unwelcome sexual advances and verbal and physical harassment.

12.    The Respondent acknowledges that the Complainant informed its CFO, Ronald Badke, that Fisher used profanity in an argument with her.

13.    On August 22, 2005, the Respondent's Vice President, Dawn Kenderdine, informed the Complainant via letter that she was being discharged because the Respondent no longer had any positions that would employ the Complainant's skills.

14. The Respondent employed Melissa Donohoe, Amy Markl, Carrie Lawson, and Kandise Noble as customer service representatives subsequent to the Complainant's departure in August, 2005.

15. The Complainant's 2004 Employee Performance Rating states that she communicated well with others, worked diligently, and was always prompt and willing to work overtime when asked.

16. Fisher was given a verbal warning on March 15, 2005 concerning the profanity he used toward the Complainant that day. On March 16, 2005, a memo concerning "Employee Conduct" was sent to all employees. Throughout the duration of the Complainant's employment with the Respondent, no disciplinary action was taken with regard to Fisher's unwanted sexual advances.

17. The Respondent was aware that Fisher posed a continued threat to subordinate female employees.

18. The Respondent knew or should have known of the Complainant's allegation of sexual harassment and failed to promptly and effectively investigate the Complainant's allegations.

WHEREFORE, probable cause exists to credit the Complainant's allegation that the Respondent unlawfully discriminated against her because of her sex, female, with respect to the terms, conditions and privileges of her employment and for discharging her for opposing an act made unlawful by the PHRA in violation of Section 5 of the Pennsylvania Human Relations Act. 43 P.S. 951-963.

## TERMS OF ADJUSTMENT

1.      The Respondent shall cease and desist from discriminating against its employees because of their sex, female, and from discharging employees in retaliation for opposing unlawful discrimination in the workplace.

2.      The Respondent shall pay the Complainant back wages, less interim earnings, from August 22, 2005 to the date that the Respondent either employs Complainant as a customer service representative or offers to employ Complainant in said position and the Complainant rejects the offer.

3.      The Respondent shall pay the Complainant front pay for a period of two years in lieu for reinstatement.

4.      The Respondent for all employment-related purposes, including but not limited to, seniority, pension, and all other employee benefits, shall treat the Complainant as if she had been employed as a full time employee at all times subsequent to August 22, 2005.

5.      The Respondent shall reimburse the Complainant for any certifiable travel expenses incurred in matters involving the complaint; compensate the Complainant for any loss of work incurred in matters involving the complaint; and reimburse the Complainant for any other verifiable, reasonable out-of-pocket expenses caused by the allegedly unlawful discriminatory practices for which probable cause has been found to exist.

6.      The Respondent shall provide training to all of its employees that is designed to educate the employees regarding the right of all employees to be free from discrimination based upon gender while at work and of the right to work in an environment that is not hostile to employees because of their gender.

7.      The Respondent shall establish, implement and educate employees on a permanent, structured procedure for reporting, investigating and punishing alleged sexual harassment in the workplace.